**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JAMES W. RIDDLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3121 |
| | § | |
| TEX-FIN, INC and T.A. HALL, JR., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is an FLSA case.  James W. Riddle sued his former employer, Tex-Fin, Inc., and its president, alleging that he had not been paid at an overtime rate for hours worked in excess of forty hours per week.  After a three-day trial, the jury answered the questions the court submitted and provided additional statements on the verdict form.   The defendants moved to enter judgment.  The plaintiff also moved to enter judgment or, alternatively, for a new trial.  For the reasons explained below, the motions to enter judgment are denied and the motion for a new trial is granted.

**I.       Background**

Riddle   was   a   maintenance   worker   at   Tex-Fin's   Houston   pipe   fabrication   and manufacturing plant.  (Docket Entry No. 1 at 2).  He was paid a set amount based on an hourly basis wage for a forty-hour week.  Riddle sued in October 2008, alleging willful violations of the FLSA and seeking actual and statutory damages for unpaid overtime, attorneys' fees and costs, and interest.  (Docket Entry No. 1).[1]  Tex-Fin counterclaimed for fraud and conversion, alleging

---

[1]    Riddle also sued Sean Hall, an officer of Tex-Fin.  (Docket Entry No. 1).  The court granted Riddle's oral motion to dismiss Sean Hall from the lawsuit.  (Docket Entry No. 23).

that Riddle took company tools when he stopped working at Tex-Fin.  (Docket Entry No. 7 at 3–4).

A jury trial was held in January 2010.  (Docket Entry Nos. 23, 25, 28).  Riddle testified that he had no records of the overtime work he claimed.  Tex-Fin had records showing that Riddle worked forty hours every week, but the testimony was that these records were routinely filled out to show forty hours of work each week and were not based on any observations or report of how many hours he in fact worked.

Riddle testified that he followed a routine of being required to work eight hours of overtime every week, plus a Saturday every month, plus two Sundays every year, for the three years of his employment at Tex-Fin.  Tex-Fin witnesses testified that Riddle did not follow such a routine and would generally leave when his shift ended.

The jury was charged and asked to answer the following questions:

> **Jury Question No. 1**
> Do you find that Mr. Riddle worked overtime hours while employed at Tex-Fin?
>
> Answer "yes" or "no." _____
>
> If you have answered this question "yes," proceed to the next question.  If you have answered "no," proceed to answer jury questions number 5 and 6.

> **Jury Question No. 2**
> Do you find that Tex-Fin had actual or constructive knowledge of Mr. Riddle working overtime hours while employed at Tex-Fin?
>
> Answer "yes" or "no." _____
>
> If you have answered this question "yes," proceed to the next question.  If you have answered "no," proceed to answer jury questions number 5 and 6.

2

**<u>Jury Question No.  3</u>**

How many overtime hours, if any, do you find that James Riddle is entitled to compensation for working?  Answer "yes" or "no" to each of the following categories:

| | | |
|---|---|---|
| 8 hours of overtime every week? | Yes ___ | No___ |
| 1 Saturday every month? | Yes ___ | No___ |
| 2 Sundays every year? | Yes ___ | No___ |

If you have answered "yes" to jury questions numbers 1 and 2, then answer the following question.  Otherwise proceed to answer jury questions number 5 and 6.

**<u>Jury Question No. 4</u>**

Do you find that the violation of the Fair Labor Standards Act, if any, was willful, that is, that Tex-Fin knew the compensation paid to James Riddle violated the Fair Labor Standards Act or showed reckless disregard for whether the compensation complied with the Act?

Answer "yes" or "no." _____

**<u>Jury Question No. 5</u>**

Do you find that the defendants have proven by a preponderance of the evidence that James Riddle took tools belonging to Tex-Fin when he stopped working for the company?

Answer "yes" or "no."_____

If you have answered this question "yes," proceed to the next question.  If you have answered "no," do not answer question 6.

**<u>Jury Question No. 6</u>**

What sum of money, if any, do you find should be awarded to the defendants for the loss of the tools?

Answer in dollars and cents, if any: $_____

(Docket Entry No. 32).  The plaintiff did not object to the jury instructions or questions.

The jury questions were submitted in this fashion in part to avoid more complex instructions and questions requiring the jury to first determine whether the FLSA had been

3

violated and whether that violation was willful, then to decide how many hours Riddle worked over a period under the statute of limitations applicable to the jury's willfulness finding, then to allocate the number of hours worked to the periods of each change in Riddle's hourly rate. The form of the jury questions that were submitted to the jury were intended to permit the court to perform such calculations, if needed, based on the jury's findings of fact. The parties did not object to the instructions or questions.

During deliberations, the jury sent three notes. The first note asked, "What documentation is required by the Federal Government to comply with the FLSA & are these rules something we can see?" (Docket Entry No. 29). The court consulted with counsel and with their consent responded, "You have all the evidence before you. Please refer to the evidence and the court's instructions." (*Id.*). The second note asked, "Can the jury set the number of hours owed to Mr. Riddle or are we bound to the 3 options in question three?" (Docket Entry No. 30). The court responded, again with the agreement of all counsel, "Please answer the jury question that has been presented to you." (*Id.*). The third note informed the court that the jury had reached a unanimous decision. (Docket Entry No. 31).

The jury answered "yes" to question one, finding that Riddle worked overtime hours while employed at Tex-Fin. (Docket Entry No. 32 at 1). The jury answered "yes" to question two, finding that Tex-Fin had actual or constructive knowledge that Riddle worked overtime hours at Tex-Fin. (*Id.* at 2). The jury answered "no" to all three subparts of question three, answering that Riddle did not work eight hours of overtime per week, one Saturday of overtime per month, or two Sundays of overtime per year. (*Id.* at 3). However, the jury wrote dollar amounts next to each subpart, despite the absence of any question asking for this information. Next to subpart one, which asked about working eight hours per week, the jury wrote "$47,000."

4

Next to subpart two, which asked about working one Saturday per month, the jury wrote "$11,500." Next to subpart three, which asked about working two Sundays per year, the jury wrote "$2,000." (*Id.*). The jury added a handwritten note stating: "We, the jury believe that James Riddle is entitled to 197 hours of overtime pay[.] This was a hard-fought compromise." (*Id.*). The jury answered "yes" to question four, finding that the FLSA violation was willful. (*Id.* at 4). The jury answered "no" to question five, finding that Riddle did not take tools belonging to Tex-Fin when he stopped working for the company. (*Id.* at 5). The jury answered "$0" to question six, finding that no money should be awarded to Tex-Fin for the tools. (*Id.* at 6). The jury was polled and confirmed that their answers were unanimous. (Docket Entry No. 28).

The defendants moved to enter judgment based on the jury's "no" answers to the question three subparts, arguing that the jury returned a consistent, reconcilable verdict in its favor and that the handwritten statements added to the answers to question three were superfluous and irrelevant and should be disregarded. (Docket Entry No. 34 at 3–5). The defendants also argued that the plaintiff had failed to object to the charge and questions. (*Id.* at 5–6).

Riddle also moved for entry of judgment, citing the jury's handwritten answers to question three as well as the "yes" answers to questions one and two. Riddle argued that the jury's dollar and number-of-hours notations to question three were not surplusage but instead their verdict. (Docket Entry No. 35 at 3–4). Riddle asked the court to enter judgment in the amount identified in the jury's handwritten comments. (*Id.* at 6). In the alternative, Riddle argued that the court should grant a new trial because the answer to question three was inconsistent with the jury's answers to questions one, two, and four, and because the jury's

5

comments cast doubt on their verdict.  (*Id.* at 7–12).  The defendants responded, reiterating the arguments in their motion to enter a take-nothing judgment.  (Docket Entry No. 36).

The arguments are analyzed below.

## II.    The Applicable Law

### A.    Inconsistent Special Verdicts

A district court may "require a jury to return only a special verdict in the form of a special written finding on each issue of fact."  FED. R. CIV. P. 49(a)(1).  If a jury returns a verdict that contains apparently inconsistent findings of fact, the court must attempt to reconcile the findings.  *Carr v. Wal-Mart Stores Inc.*, 312 F.3d 667, 670 (5th Cir. 2002); *see also Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058–59 (9th Cir. 2003).  The answers should be reconciled "in light of the surrounding circumstances, including the instructions of the court."  *United States v. $9,041,598.68*, 163 F.3d 238, 249 (5th Cir. 1998) (quoting *Davis v. W. Cmty. Hosp.*, 755 F.2d 455, 465 (5th Cir. 1985)), *superseded by statute on other grounds*, 18 U.S.C. § 983(j) (2000).  The jury's answers are "irreconcilably inconsistent" if they are "logically incompatible, thereby indicating that the jury was confused or abused its power."  *Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005) (quoting *Stone v. Chicago*, 738 F.2d 896, 899 (7th Cir. 1984)).

The Fifth Circuit has recognized that the "district judge, who has observed the jury during the trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty."  *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988).  The district court is afforded "considerable latitude" in interpreting the jury's findings.  *Carr*, 312 F.3d at 670.

6

### B.      A New Trial

Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a).  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Beckham v. La. Dock Co.*, 124 F. App'x 268, 270 (5th Cir. 2005) (per curiam) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985)).  A new trial may also be granted when there is "uncertainty or contingency to the finality of the jury's determination," *see Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967), or when the jury's inconsistent verdict cannot be reconciled, *see Crossland v. Canteen Corp.*, 711 F.2d 714, 726 (5th Cir. 1983).

### C.      Jury Notations

"Federal courts have long held that additional jury notations that are not directly responsive to the jury charge and verdict form are surplusage, and are to be ignored."  *Great Pines Water Co. v. Liqui-Box Corp.*, 203 F.3d 920, 924 (5th Cir. 2000); *see also Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991).  However, if the jury's notations and the circumstances strongly suggest that there would not have been agreement on the verdict unless the handwritten notations were also accepted, the verdict cannot be accepted.  *See Cook*, 379 F.2d at 970.  A new trial is also warranted if a trial court cannot reconcile the jury's inconsistent answers to special interrogatories.  *See Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 372 (5th Cir. 1999).  In making these determinations, "no judicial inquiry is permitted into the jury's deliberative process to determine if in fact the court's instructions were properly followed."

7

*United States v. D'Angelo*, 598 F.2d 1002, 1004 (5th Cir. 1979) (summary calendar).

III.    **Analysis**

The jury's verdict in this case raises several issues, including: (1) whether the jury's verdict is inconsistent and, if so, whether it can be reconciled; (2) the effect of the jury's handwritten notations to question three; and (3) the effect of the absence of objections to the jury questions.  The defendants argue that the jury's answers are consistent and reconcilable and the jury's handwritten statements in question three are surplusage and must be disregarded as a matter of law.  Riddle argues that the verdict is inconsistent and that the jury's handwritten statements are not surplusage but rather cast doubt on the verdict.

A.    **The Consistency of the Special Verdict Answers**

Courts have held that jury answers are inconsistent when the jury answers additional questions that should not have been answered in light of a predicate question.  *See e.g.*, *Carr v. Wal-Mart Stores Inc.*, 312 F.3d 667, 674 (5th Cir. 2002) (holding there was conflict in the jury's verdict when the jury first answered that the defendant was not negligent and then, in violation of the court's instructions, also found that the negligence did not cause the plaintiff's injury); *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987) (holding that when subsequent jury questions are predicated on an affirmative response to one question but the jury continues to answer questions following a negative answer to the predicate question, "the subsequent answers had to conflict with the answer to [the predicate question], regardless of whether they were also in conflict to each other").  Jury answers may also be inconsistent when they reflect conflicting views of the facts.  *See, e.g.*, *Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005) ("[A] verdict that finds (1) no negligence by the defendant and (2) that the defendant's negligence caused the plaintiff's injuries, is facially inconsistent and cannot form the basis of a

8

judgment."); *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1259–60 (5th Cir. 1988) (the jury found that the defendant's product did not cause the plaintiff's injury but also assigned fault to the defendant); *Crossland v. Canteen Corp.*, 711 F.2d 714, 725–26 (5th Cir. 1983) (the jury awarded different damage amounts on a fraud claim and a DTPA claim predicated on the same conduct and the same injury).  The Fifth Circuit has held that a district court may attempt to harmonize the verdict by determining whether inconsistent answers may be disregarded.  *See, e.g.*, *White*, 809 F.2d at 1161.  The district court may also resubmit questions to the jury.  *See, e.g.*, *Richard*, 853 at 1259–60; *see also Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1056 (9th Cir. 2003) ("The practice of resubmitting an inconsistent verdict to the jury for clarification is well-accepted.").  If the jury's answers cannot be reconciled, a new trial is appropriate.  *See Crossland*, 711 F.2d at 726 (vacating and remanding for a partial new trial on damages); 9B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2510 (3d ed. 2008) ("If the jury's answers are inconsistent with each other even when the presiding judge views them in the most generous way to avoid such a conclusion, a new trial under Rule 59(a) ordinarily is the proper pathway for the trial judge to follow and may be the required course . . . .").

Riddle's motion that this court enter judgment in an amount based on the jury's handwritten notations to question three would result in a factual inconsistency within the verdict. The dollar amounts the jury wrote next to question three subparts, if taken as damages amounts, are inconsistent with both the notation of 197 hours in unpaid overtime and with the answers to the inquires actually posed in question three.  The jury wrote "$47,000," "$11,500," and "$2,000," which is a total of $60,500.  Divided by 197 hours, that would result in an overtime rate of approximately $307 per hour, corresponding to an hourly wage of approximately $205.

At oral argument on the motions to enter judgment, counsel for Riddle admitted that the evidence presented at trial did not support such an award. This court has no basis to determine what the jury intended by the dollar amount finding. Nor is there a reasoned basis to accept the 197 hours notation without also accepting the dollar figure notations. The handwritten notations would be an irreconcilable verdict. Riddle's motion for entry of judgment is denied.

### B.      The Effect of the Jury's Handwritten Notations

The defendants argue that the jury's handwritten notations are surplusage and must be disregarded as a matter of law. Riddle argues that the jury's handwritten statements are not surplusage but rather cast doubt on the verdict, relying on *Cook v. United States*, 379 F.2d 966 (5th Cir. 1967), among other cases.

In *Cook*, the defendant was convicted of understating his income on federal tax returns. The jury wrote on the verdict form: "This Jury, however, respectfully request that this court give to [the defendant] every degree of leniency possible." *Id.* The jury was polled. The first juror responded that he voted guilty but "was reluctant to at the beginning"; the second juror responded "guilty"; the third juror responded "[g]uilty, based on the note at the bottom"; and the remaining jurors responded, essentially, "[g]uilty, as noted at the bottom of the verdict." *Id.* at 969. The defendant's counsel requested that the court ask the jury whether the guilty vote was qualified by the note seeking leniency. The court refused. *Id.* The defendant's counsel then requested that the court ask each juror whether he or she would have voted "guilty" without a leniency recommendation. The court refused. *Id.* The Fifth Circuit held that under the circumstances, it had "serious doubt that the jury did not qualify its verdict of guilty be predicating and conditioning it on the request for 'every degree of leniency possible.'" *Id.* at 970. The court held that "where the circumstances strongly suggest that there would have been

no agreement as to the verdict unless the recommendation of leniency was also accepted, the effect of the recommendation, steadfastly adhered to on the poll, was to nullify the verdict." *Id.* There could be "no verdict as long as there [was] any uncertainty or contingency to the finality of the jury's determination." *Id.* The court remanded for a new trial. *Id.* at 972.

The Fifth Circuit distinguished *Cook* in *United States v. D'Angelo*, 598 F.2d 1002 (5th Cir. 1979) (summary calendar). In *D'Angelo*, the jury returned a guilty verdict against three defendants in a drug prosecution. *Id.* at 1002. After the verdict, the jury sent a note stating, "We have had great difficulty deciding and coming to agreement about [one of the three defendants] and have decided as we did only because we believe He knew about the transactions and thus was a conspirator." *Id.* at 1003. This defendant appealed, arguing that the jury applied the wrong standard because participation, not mere knowledge, was necessary to convict for conspiracy. *Id.* The court held that the jury's note did not warrant reversal. *Id.* The court characterized the defendant's argument as an attempt to probe the process of the jury's deliberation. *Id.* at 1004. The court distinguished *Cook* on the basis that in *D'Angelo*, the juror's note did not raise a question about what the jury's verdict actually was or whether it was unanimous. *Id.* n.3.

In *Great Pines Water Co. v. Liqui-Box Corp.*, 203 F.3d 920, 922 (5th Cir. 2000), the trial court submitted fourteen jury questions on liability and damages. The court gave instructions that in determining damages, the jury could consider lost profits, consequential damages, and the costs of removing and replacing the equipment at issue in the litigation. *Id.* The jury found in favor of the plaintiff on its fraud, breach of contract, and Texas DTPA claims. The jury questions asked for a single damages amount for each claim. The jury questions did not ask for a specific amount for each damages element. The jury, however, wrote down a dollar value for

11

each element.  *Id.*  In response to the question on damages for the fraud and breach of contract actions, the jury not only gave a total but also gave a specific amount in marginal notes next to each of the damages elements.  The jury wrote zero for removal and replacement costs and gave specific dollar figures for lost profits and consequential damages.  In response to a separate question on a DTPA claim, the jury again gave a total number and in the margin wrote dollar figures for removal and replacement costs and zero for lost profits and consequential damages. The plaintiff elected to recover on the fraud claim, which afforded the largest recovery.  On appeal, the only issues were about the damages awarded.  The Fifth Circuit reviewed the evidence and found no support for any award of lost profits under Texas law.  *Id.* at 924.  The defendant argued that the court should use the jury's handwritten marginal notes on the verdict form to award only the damages that the jury listed for removal and replacement costs.  *Id.*  The court held that the unsolicited specific dollar figures for each damage element were surplusage that had to be disregarded.  The court refused to modify the judgment and ordered a partial new damage trial to determine damages for removal and replacement.  *Id.* at 925–26.

The *Great Pines* court cited favorably to the Ninth Circuit's opinion in *Tanno v. S.S. President Madison VES*, 830 F.2d 991 (9th Cir. 1987).  In *Tanno*, the jury returned a verdict in favor of a maritime-tort plaintiff and answered questions about damages by providing dollar amounts for past wage loss, past physical pain and suffering, future lost earning capacity, and future physical pain and mental suffering.  *Id.* at 992.  The jury added parenthetical notes next to the damage numbers showing how it had performed its damage calculation.  The notes indicated that the past wage loss was based on a monthly rate times eighteen months and that the past physical pain and mental suffering was for six days of pain before hospitalization.  *Id.*  The court observed that the statements written on the verdict form indicated an inconsistency because it

was "unlikely in the extreme" that the plaintiff would have been unable to work for eighteen months but suffered no pain after six days.  *Id.* at 993.  The court held that although it was "not entirely free from doubt," the notations were surplusage and should be disregarded.  *Id.*  The court described the notations as the jury's "attempt to explain the mental processes" followed in figuring out the damages and held that they could not be considered, even if they exposed an implicit contradiction in the jury's award.  *Id.*  The court affirmed the jury verdict.  *Id.*

The Ninth Circuit has since favorably cited *Tanno*.  In *Floyd v. Laws*, 929 F.2d 1390 (9th Cir. 1991), the jury answered several questions and found that the plaintiff was not damaged as a result of the defendant's actions.  *Id.* at 1392–93.  The questions were predicated and the jury was told that if it had answered "no" to the first question, no answer should be given to the next question, which asked for a damages amount.  The jury nonetheless answered the second question, giving a dollar figure.  *Id.* at 1393.  After discussing *Tanno*, the appellate court held that the district court properly disregarded the damages figure as surplusage.  *Id.* at 1399–1400.  The Ninth Circuit has since emphasized that the district court's express instruction not to answer the second question was an integral part of the *Tanno* decision.  *See Restivo v. Home Depot, Inc.*, 191 F.3d 461 (9th Cir. 1999) (unpublished).  The Fifth Circuit had reached a similar conclusion in *White v. Grinfas*, 809 F.2d 1157 (5th Cir. 1987), holding that if a jury answered "no" to a question and the next questions were predicated on a "yes" answer to the first question, the jury's answers to the next questions did not cast doubt upon the jury's verdict.  *Id.* at 1161.

The cases recognize an important exception to the general rule that unsolicited jury comments are surplusage that must be disregarded.  That exception permits a court to consider unsolicited jury answers or statements if they cast doubt on the unqualified nature of the verdict.  *See United States v. Ailsworth*, 138 F.3d 843, 846 (10th Cir. 1998) ("Generally, unnecessary or

irrelevant statements in a verdict form may be disregarded as surplusage.  An exception to this general rule arises where the circumstances of the jury's recommendation cast doubt upon the unqualified nature of the verdict." (citations omitted)); *see also Gov't of the Virgin Islands v. Simmons*, 43 F. App'x 469, 472 (3d Cir. 2002) (citing *Cook* and *Ailsworth* and declining to find that a jury note recommending mandatory psychological treatment as part of the defendant's rehabilitation cast doubt on the jury's guilty verdict); *R.K. v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, No. C04-2338RSM, 2006 WL 3486798, at *2 (W.D. Wash. Dec. 1, 2006) (citing *Tanno* and *Great Pines*, among others, and holding that the "limited circumstances" under which marginal notes produced uncertainty as to the unqualified nature of the verdict did not apply when the jury's marginal notes next to its verdict arguably showed that the jury did not understand the difference between allocating fault between entities and segregating damages between intentional and negligent conduct), *aff'd sub nom. Fleming v. Church of Latter Day Saints*, 275 F. App'x 626 (9th Cir. 2008).

In this case, the jury's unsolicited statements about the number of overtime hours Riddle worked and the statement that the verdict was the result of a "hard-fought compromise" raise two problems.  First, the statements cast doubt on the unqualified nature of the verdict.  The jury answered "yes" to questions asking whether Riddle worked overtime hours and whether Tex-Fin knew about the overtime hours he worked.  The jury found that Tex-Fin's failure to pay for the overtime hours was willful.  The jury answered "no" to subparts of question three asking whether Riddle worked the total number of hours he claimed: 8 hours per week, which would have totaled 416 hours of overtime a year; one Saturday a month, which would have totaled 96 hours of overtime per year; and 2 Sundays a year, which would have totaled 16 hours a year, for a grand total of 528 hours a year or 1,584 hours over the 3 years of his employment.  The jury's

handwritten numbers next to each of the subparts give dollar figures that appear to correspond to these totals. The jury then went on to state that Riddle had worked 197 hours of overtime and that this number was a "hard-fought compromise." (Docket Entry No. 32 at 3). The jury's finding that Riddle worked some, but not all, of the hours he claimed and their statement that the verdict was a "hard-fought compromise" shows that were it not for the qualification that Riddle recover for 197 hours of overtime pay, the jury verdict would not have been unanimous. *Cf. Box v. Birmingham Southeast, LLC*, 235 F.3d 1342, No. 00-60067, 2000 WL 1673122, at *2 (5th Cir. Oct. 19, 2000) (per curiam) (summary calendar) (unpublished) ("If the record demonstrates that the jury's assessment of liability or damages stemmed from a compromise, the aggrieved party is entitled to a new trial." (citing *Yarbrough v. Sturm, Ruger & Co.*, 964 F.2d 376, 379 (5th Cir. 1992))); *Yarbrough*, 964 F.2d at 379 ("If the record indicates that a liability verdict stemmed from a compromise on damages, the complaining party is entitled to a new trial, for considerations of damages should not taint the initial question of the defendant's fault."); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810 (2d ed. 1995) ("If it is obvious on the face of the verdict that it is a compromise, this will justify a new trial . . . ."). As in *Cook*, "the circumstances strongly suggest that there would have been no agreement as to the verdict unless the recommendation . . . was also accepted, [and] the effect of the recommendation . . . was to nullify the verdict." *Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967). The "uncertainty or contingency to the finality of the jury's determination," *id.*, requires a new trial.

### C.    Waiver

The defendants' argument that Riddle has waived any right to a new trial by failing to object to the form of the questions before they were submitted is unpersuasive. (Docket Entry

15

No. 36 at 7–8). First, the jury charge and questions are distinct from the issue whether the jury's verdict strongly calls into question its unqualified nature. Second, Rule 49(a) is unhelpful. Rule 49(a) provides:

> A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

FED. R. CIV. P. 49(a)(3); *see also Leonard v. Aluminum Co. of Am.*, 800 F.2d 523, 524–25 (5th Cir. 1986) ("[I]f an issue is omitted in a special verdict, no party demands its inclusion, and the court makes no findings respecting it, then a finding on the issue consistent with the judgment may be deemed to have been made."). To the extent the defendants argue that Riddle waived a right to have the number of overtime hours Riddle worked at Tex-Fin submitted to the jury because he failed to demand submission of that issue, that argument is unpersuasive. The issue of how many overtime hours Riddle worked was submitted to the jury, but the question was submitted in a form that did not permit the jury to provide its findings of fact. Rule 49(a) does not address a procedure for the trial court if the jury makes additional findings that cannot be disregarded as mere surplusage. The jury's unsolicited handwritten notations to question three also weigh against this court making a finding on the issue. *See Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997) ("[A] Rule 49(a) finding cannot be inconsistent with the jury verdict."). The final sentence of Rule 49(a) is not applicable because no judgment will be entered on the special verdict.

The third problem is that, in hindsight, the form of the question was itself plainly erroneous. *See Jacobs v. City of Philadelphia*, No. Civ. A. 03-CV-950, 2005 WL 1899499, at

*12 (E.D. Penn. Aug. 8, 2005) (reviewing jury instructions for plain error after concluding the plaintiff waived his argument that the jury interrogatories were inconsistent by failing to object when the instructions and verdict were given to the jury or when the jury returned its verdict), *aff'd*, 212 F. App'x 68 (3d Cir. 2006).   The jury's unsolicited answers reveal the problem with the form of the question.   The all-or-nothing nature of question three, and the absence of any question asking the jury to find how many hours Riddle worked in excess of forty hours in a work week, did not allow the jury to find that Riddle did work overtime hours with Tex-Fin's knowledge, but that he did not work as many hours as he claimed.   Yet that is precisely what the jury ended up concluding.   The verdict form did not submit to the jury the material issues the pleadings and the evidence raised.   *See Broadcast Satellite Int'l, Inc. v. Nat'l Digital Television Center, Inc.*, 323 F.3d 339, 342 (5th Cir. 2003) (noting that submitting a special verdict is within the discretion of the trial court but that the judge "must submit to the jury all material issues raised by the pleadings and the evidence"); *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1577 (5th Cir. 1996) ("In determining the propriety of special interrogatories, we inquire into several specific factors: (i) whether, when read as a whole in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury; (ii) whether the submission of the issues to the jury was 'fair'; and (iii) whether the 'ultimate questions of fact' were clearly submitted to the jury.").   This was plain error and any failure to object did not waive the right to seek a new trial.

Finally, to the extent the defendants argue that Riddle failed to object to an allegedly inconsistent verdict before the jury was discharged, that argument is also unpersuasive.   The Fifth Circuit has held that a failure to object to inconsistent answers when the jury returns its verdict does not waive the right to raise the issue in a motion for a new trial because "the judge

17

has no authority to enter judgment based upon those [inconsistent] answers." *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 397–98 (5th Cir. 1986); *accord Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1141 (10th Cir. 2005) ("When a jury returns a special verdict . . . a party is not required to object to inconsistencies in the verdict before the jury is discharged in order to preserve the issue.").

Riddle did not waive his right to seek a new trial.  Riddle's motion for a new trial is granted.

**IV.     Conclusion**

Riddle's motion and Tex-Fin's motion to enter judgment are denied.  Riddle's motion for a new trial is granted.

SIGNED on June 14, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

18