**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JAMES W. RIDDLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3121 |
| | § | |
| | § | |
| TEX-FIN, INC. and T.A. HALL, JR., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

James W. Riddle was a maintenance worker at Tex-Fin, Inc. from October 2005 to September 2008. Riddle sued the company for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (Docket Entry No. 1).[1]  The second trial resulted in a jury determination that Riddle had worked a total of 79 hours of unpaid overtime, far less than the approximately 1,512 hours Riddle alleged. (Docket Entry No. 66).  Riddle has moved for entry of judgment. (Docket Entry No. 67).  In addition to actual damages of $3,323.61 for the unpaid overtime hours proven at trial, he also seeks liquidated damages in the same amount, attorney's fees in the amount of $69,712.50, and costs of court.  Riddle moved for costs in the amount of $4,502.51, then reduced the amount sought to $1,782.34.  Tex-Fin responded that liquidated damages and attorney's fees are inappropriate in this case, and that the amount of costs was excessive. (Docket Entry No. 68).  Riddle replied. (Docket Entry No. 70).

---

[1] Riddle originally sued Sean Hall and T.A. Hall, Jr., then nonsuited them. (Docket Entry Nos. 23, 47).

Based on the record; the motion, response, and reply; and the relevant case law, this court grants the motion for entry of judgment. Tex-Fin must pay Riddle $3,323.61 in actual damages, $3,323.61 in liquidated damages, $32,175 in attorney's fees, and $791.54 in costs. Final judgment is entered by separate order.

The reasons for these rulings are explained below.

## I.    Background

Riddle worked as a maintenance worker at Tex-Fin's pipe fabrication and manufacturing plant near Houston, Texas from October 2005 until September 2008. He was paid a set amount based on an hourly wage for a 40-hour week. Riddle sued on October 21, 2008, alleging that Tex-Fin had failed to pay him for hours he worked above the 40 hours scheduled each workweek during his employment. Riddle alleged willful FLSA violations and sought actual and liquidated damages for unpaid overtime, attorney's fees, costs, and interest. Riddle claimed that he worked approximately eight hours of overtime each week he worked for Tex-Fin and also worked one Saturday and two Sundays each month, for a total of about 1,512 hours of unpaid overtime. Tex-Fin counterclaimed for fraud and conversion, alleging that Riddle had taken work tools when he quit his job. (Docket Entry No. 7).

Before trial, the parties attempted mediation. Riddle's attorney asserts that he offered to settle the case for $85,000. Tex-Fin countered with zero. Riddle lowered his request to $75,000, and Tex-Fin again countered with zero. The mediator dissolved the mediation.

Two trials were required. The first took place in January 2010. The jury rejected Tex-Fin's fraud and conversion claims. The jury was asked four questions relevant to Riddle's hours:

**Jury Question No. 1**

Do you find that Mr. Riddle worked overtime hours while employed at Tex-Fin?

Answer "yes" or "no." _____

If you have answered this question "yes," proceed to the next question. If you have answered "no," proceed to answer jury questions number 5 and 6.

**Jury Question No. 2**

Do you find that Tex-Fin had actual or constructive knowledge of Mr. Riddle working overtime hours while employed at Tex-Fin?

Answer "yes" or "no." _____

If you have answered this question "yes," proceed to the next question. If you have answered "no," proceed to answer jury questions number 5 and 6.

**Jury Question No.  3**

How many overtime hours, if any, do you find that James Riddle is entitled to compensation for working?  Answer "yes" or "no" to each of the following categories:

| | |
|---|---|
| 8 hours of overtime every week? | Yes ___ No___ |
| 1 Saturday every month? | Yes ___ No___ |
| 2 Sundays every year? | Yes ___ No___ |

If you have answered "yes" to jury questions numbers 1 and 2, then answer the following question.  Otherwise proceed to answer jury questions number 5 and 6.

**Jury Question No. 4**

Do you find that the violation of the Fair Labor Standards Act, if any, was willful, that is, that Tex-Fin knew the compensation paid to James Riddle violated the Fair Labor Standards Act or showed reckless disregard for whether the compensation complied with the Act?

3

Answer "yes" or "no." _____

(Docket Entry No. 32).  No party objected to these questions.

The jury answered "yes" to questions one, two, and four.  To each subpart of Question 3, the jury answered "no."  The foreperson wrote next to the subparts, respectively, "$47,000," "$11,500," and "$2,000."  Below the answer to question three, the foreperson wrote, "We, the jury believe that James Riddle is entitled to 197 hours of overtime pay.  This was a hard-fought compromise."  (*Id.*).  The answers were inconsistent and did not correspond to the questions asked.  This court set aside the verdict and ordered a new trial.  (Docket Entry No. 39).

After the first trial, Riddle's attorney offered to settle the case for $25,000, including fees.  Tex-Fin refused.

A second two-day trial took place on July 19 and 20, 2010.  The jury was first asked the following question:

**Jury Question No. 1**

Do you find that James Riddle has proven by a preponderance of the evidence that he worked more than 40 hours without receiving overtime compensation in one or more workweeks during the three years of his employment at Tex-Fin?  In answering the jury questions, use the definition of "hours worked" provided in these instructions.

Answer "yes" or "no." _____

If you have answered this question "yes," proceed to the next question.  If you have answered "no," do not answer any more questions.

(Docket Entry No. 66).  The jury answered "yes."  Question 2 asked the jury to decide the number of overtime hours Riddle worked in each of 79 workweeks.  The jury answered 1 hour for each week, totaling 79 hours.  The jury was also asked to determine the total number of overtime hours

4

Riddle worked on Saturdays from October 21, 2005 to October 21, 2006, and from October 22, 2006 to September 19, 2008.  The jury filled in "4" for the first period and "8" for the second.  The jury was also asked the number of hours Riddle worked on Sundays for each period.  The jury answered "0" to both.

The jury was also asked whether any FLSA violation was willful.  Question 3 asked:

> Do you find that the violation of the Fair Labor Standards Act, if any, was willful, that is, that Tex-Fin knew the compensation paid to James Riddle violated the Fair Labor Standards Act or showed reckless disregard for whether the compensation complied with the Act?
>
> Answer "yes" or "no." _____

(*Id.*).  The jury answered "no."

Riddle moved for entry of judgment.  (Docket Entry No. 76).  He seeks $3,323.61 each in actual and liquidated damages; $69,712.50 in attorney's fees; and $1,782.34[2] in costs.  Tex-Fin responded.  (Docket Entry No. 68).  Tex-Fin did not contest the amount of actual damages but contended that liquidated damages were inappropriate because it reasonably acted in good faith to comply with the FLSA.  Tex-Fin also urged the court to award no attorney's fees.  Alternatively, Tex-Fin argued for a reduction in the fee amount in light of the disparity between the recovery sought and obtained.  Tex-Fin also argued that some of the billings were unreasonable and inadequately supported.  Finally, Tex-Fin argued that Riddle is entitled to only $791.54 in costs. Riddle replied.  (Docket Entry No. 69).

Each argument is addressed below.

_____

[2]  Riddle initially sought $4,502.51 in costs.  After Tex-Fin challenged the amount, Riddle reduced the costs sought to $1,782.34, conceding that some items in his original request were not recoverable under the statute, 28 U.S.C. § 1920.

## II.     Analysis

### A.     The FLSA

Under the FLSA,

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. . . .  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b).  Although the parties agree on the amount of actual damages, they dispute the liquidated damages, attorney's fees, and costs.

### B.     Actual Damages

The FLSA mandates that a covered employee be paid one-and-a-half times his ordinary wage for every hour worked beyond forty hours each week.  29 U.S.C. § 207(a)(1); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 476 (1948); *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 300 (5th Cir. 2003); *Garza v. Smith Int'l, Inc.*, Civ. A. No. C-10-100, 2011 WL 338819, at *1 (S.D. Tex. Feb. 2, 2011); *Halford v. No Hope Logging, Inc.*, 727 F. Supp. 2d 523, 527 n.3 (S.D. Miss. 2010).  The jury concluded that Riddle worked 79 hours in unpaid overtime.  Ten of the hours were between October 21, 2006 and January 19, 20007.  At that time, Riddle's hourly wage was $27.50 per hour, yielding an overtime wage of $41.25.  Riddle's overtime pay for the period is $412.50.  The jury found that Riddle worked 69 overtime hours between January 20, 2008 and September 21, 2008.  Riddle's wage during that period was $28.13 per hour, yielding an overtime rate of $42.19.  Riddle's overtime wages for that period are $2,911.11.  The parties agree with these calculations.  Riddle is entitled to a total of $3,323.61 in actual damages.

### C.        Liquidated Damages

Section 216(b) provides for "an additional equal amount in liquidated damages."  29 U.S.C.

§ 216(b).  The purpose of liquidated damages is to "compensate an employee for delay in payment."

*Reich v. Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993) (citing *Brooklyn Savings Bank*

*v. O'Neil*, 324 U.S. 697, 715–16 (1945)).  A court must generally must award the full amount of

liquidated damages as liquidated damages.  *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822–23 (5th

Cir. 2003).  If the court concludes that the employer acted in good faith and had reasonable grounds

for believing that the conduct did not violate the FLSA, the court may "award no liquidated damages

or any amount" up to actual damages.  29 U.S.C. § 260; 29 C.F.R. § 790.22(b); *Singer*, 324 F.3d at

822–23.

It is the employer's burden to prove good faith and reasonableness.  *Lee v. Coahoma Cnty.,*

*Miss.*, 937 F.2d 220, 227 (5th Cir. 1991); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 925

(E.D. La. 2009).  If the jury concludes that the employer has willfully violated the FLSA, the

employer cannot demonstrate good faith, and the court must award liquidated damages in the full

amount.  *Singer*, 324 F.3d at 823 (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir.

1999)); *Lee*, 937 F.2d at 226.  But "[a] finding that defendant's actions were not willful does not

preclude a finding that defendant did not act in good faith and on reasonable grounds."  *Johnson*,

604 F. Supp. 2d at 926 (citing *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th

Cir. 2008) ("Because the burden of proof is placed differently, a finding that willfulness was not

present may co-exist peacefully with a finding that good faith was not present.")).

The employer's burden to demonstrate good faith and a reasonable belief that its actions

complied with the FLSA is "substantial."  *Singer*, 324 F.3d at 323; *Mireles v. Frio Foods, Inc.*, 899

F.2d 1407, 1415 (5th Cir. 1990).  "Good faith cannot be based on ignorance, but instead 'requires some duty to investigate potential liability under the FLSA.'"  *Johnson*, 604 F. Supp. 2d at 926 (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir. 1979)).  The employer must show that it "had an honest intention to ascertain what the Act requires and to act in accordance with it."  *Id.* (citing *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991) (internal citations omitted)).  Even if the court concludes that the employer acted reasonably and in good faith, there is a "strong presumption . . . in favor of doubling."  *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998)).  "Doubling of an award is the norm . . . ."  *Id.* (discussing the Family and Medical Leave Act, which uses essentially the same damages scheme as the FLSA).

Tex-Fin argues that it meets the statutory exception to pay no liquidated damages.  Tex-Fin points to testimony from three employees that Tex-Fin was aware of its FLSA obligations and sought to meet them.  But the evidence was that Tex-Fin recorded 40 hours of work for Riddle each week, even when Tex-Fin knew Riddle had worked more.  Tex-Fin points to evidence that Riddle received his pay statement and had an opportunity to object, but Riddle testified that he was told he could not be paid for more than 40 hours in a week.  Although the jury did not fully credit Riddle's testimony as to the number of overtime hours he had worked, or find that Tex-Fin's violation was willful, the jury found that Riddle had worked 79 hours of unpaid overtime.  The fact that the jury did not find willfulness does not require a good-faith finding.  *Johnson*, 604 F. Supp. 2d at 926.  Tex-Fin has not met its substantial burden to show good faith and a reasonable basis to believe it complied with the statute.  Riddle is entitled to recover $3,323.61 in liquidated damages.

C.       **Attorney's Fees**[3]

Riddle's counsel, Douglas Welmaker, has submitted two detailed declarations describing the basis for the fees sought.  (Docket Entry No. 67, Ex. A; Docket Entry No. 70, Ex. A).  He has also submitted a summary of the hours spent on this case.  (Docket Entry No. 67, Ex. A, Att.1).  Counsel for Tex-Fin has submitted an affidavit contesting Welmaker's submissions.  (Docket Entry No. 69-1).

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases.  *See Kreager v. Solomon & Flanagan P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).  A party is a "prevailing party" for the purpose of an attorney's fee award if the party "succeeded on any significant claim affording it some of the relief sought."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).

Courts use the lodestar method to assess attorney's fees in FLSA suits.  *Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney.  *Id.*  The court then multiplies the number of hours reasonably expended by the reasonable hourly rate to obtain the lodestar.  *Id.*  The party seeking attorney's fees bears the burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

---

[3]   Riddle's request for attorney's fees is based in large part on Welmaker's declarations.  Tex-Fin argues that a sworn affidavit is required.  The declaration is signed and concludes, "I declare under penalty of perjury that the foregoing is true and correct."  The declaration is equivalent to an affidavit.  28 U.S.C. § 1746(2); *Hart v. Hairston*, 343 F.3d 762, 764 n.1 (5th Cir. 2003).  Tex-Fin's objection is overruled.

After calculating the lodestar, the court must consider whether to adjust the fee upward or downward under the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The most important factor to consider is the degree of success obtained. If the success is limited, the lodestar may be reduced to reflect that, but the fee award need not be precisely proportionate to the damages. *Saizan*, 448 F.3d at 802–03 & n.42. Tex-Fin contends that this court should at most award a fee amount equal to the damages awarded. Tex-Fin argues that otherwise, "the message that will be sent is that no matter how poor the first claim is, it should be tried so that the plaintiff can maximize his recovery through unreasonable attorney's fees." (Docket Entry No. 69 at 14). The case law does not support this argument. "Given the nature of claims under the FLSA, it is not uncommon that attorney's fee requests will exceed the amount of judgment in the case." *Howe v. Hoffman-Curtis Partners Ltd.*, 215 F. App'x 341, 342 (5th Cir. 2007) (per curiam) (unpublished); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB)(VVP), 2010 WL 2772493, at *7 (E.D. N.Y. June 21, 2010) (noting in an FLSA case the "not uncommon outcome in which the award of fees and costs eclipses the damages award); *Rivera Santiago v. Wm. G Roe & Sons, Inc.*, No.

10

8:07-CV01786-T-27MAP, 2010 WL 2985697, at *4 (M.D. Fla. Feb. 4, 2010); *Roussel v. Brinker Int'l, Inc.*, 2010 WL 1881898, at *11 (S.D. Tex. Jan. 13, 2010); *Prader v. Commerce Equities Mgmt. Co.*, Civ. A. No. H-07-2349, 2008 WL 5140045, at *3 (S.D. Tex. 2008); *Powell v. Carey Int'l., Inc.*, 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008); *All-Ways Logistics, Inc. v. USA Truck, Inc.*, No. 3:06cv-0087 SWW, 2007 WL 4285410, at *12 (E.D. Ark. Dec. 4, 2007); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955–56 (E.D. Wis. 2003); *Holyfield v. F.P. Quinn & Co.*, No. 90 C. 507, 1991 WL 65928, at *1 (N.D. Ill. Apr. 22, 1991).

### 1.    The Lodestar Calculation

### a.    The Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The party seeking fees bears the burden of establishing the market rate and should present evidence from which the court can determine the reasonableness of the proposed rate. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

To establish the reasonableness of the requested rate, counsel "must produce satisfactory evidence—in addition to [his] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Deltatech Constr., LLC v. Sherwin-Williams Co.*, No. Civ. A. 04-2890, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)); *see also Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007) ("The

evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits"). In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976).

Riddle was represented by Warren & Siurek, L.L.P. Although several attorneys worked on the case, Riddle has requested reimbursement only for Douglas B. Welmaker's time, removing approximately $2,840 from the requested award for short periods of time spent by other lawyers. Welmaker has practiced primarily labor and employment law since his 2003 bar admission. His billing rate in the records submitted to this court is $325. Another judge of this court approved Welmaker's $325-an-hour billing rate in 2009. *Miller v. Prominence §. Agency, Inc.*, Civ. A. No. H-08-978, at *5 (S.D. Tex. Nov. 17, 2009). This court has previously considered evidence that attorneys with less experience reasonably charge an hourly rate between $225 and $350. *Hilton v. Executive Self Storage Assocs., Inc.*, Civ. A. No. H-06-2744, 2009 WL 1750121, at *9 (S.D. Tex. June 18, 2009). The hourly rate submitted by Warren & Siurek is consistent with prevailing Houston market rates for attorneys with comparable credentials and experience and reasonable.

There is no need to consider the reasonableness of legal-assistant rates because the 85 hours they spent on this case have been removed from the requested fee award. That adjustment, according to Riddle, deducted another $11,612.50 from the fees sought.

### b.    The Number of Hours Reasonably Expended

The second step of the lodestar analysis is to determine the number of hours reasonably expended on the litigation. The application should include "contemporaneously created time records

that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.*  (internal quotations and citations omitted).  Fee applicants bear the burden of establishing appropriate hours and the exercise of billing judgment. *Saizan*, 448 F.3d at 799; *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Riley*, 99 F.3d at 760.  Billing judgment requires documenting both the hours charged and those not charged as unproductive, excessive, or redundant.  *Saizan*, 448 F.3d at 799.

Warren & Siurek has represented Riddle since October 2008.  Welmaker prepared the case and tried it twice, with significant posttrial motions after the first trial.  As noted above, Welmaker is not the only attorney who has worked on this case, but Riddle has limited his fee request to Welmaker's time.  Two other attorneys at the firm, Mark Siurek and Patricia Haylon, worked 8 hours on the case, $2,840 at their customary rate.  Legal assistants spent 85 hours on Riddle's claim. Their usual billing rate ranges from $125 to $175.  Warren & Siurek values their time at $11,612.50. That time is not included.

Welmaker asserts that he has reduced his own time by more than thirty hours.  (Docket Entry No. 67 ¶¶ 21–23).  This reduction included time spent time preparing for mediation, waiting for the jury's verdict, evaluating which motions to file, and researching the postverdict motion and response in the first case. (Docket Entry No. 70, Ex. A at 1–2).  These reductions total $24,527.50, $10,000 of which represents Welmaker's time.  Welmaker's reduction of his own time and other adjustments reflect billing judgment. *See  Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 181–82

(5th Cir. 2007) (affirming the district court's reduction in reasonable hours because of a lack of billing judgment); *Saizan*, 448 F.3d at 800 (same); *Marrow v. Ingra*, Civ. A. No. 1:70cv4716, 2011 WL 815105, at *2 (S.D. Miss. Mar. 1, 2011) (reducing hours due to excess travel time and overstaffing); *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *3–4 (N.D. Tex. Feb. 11, 2011) (reducing hours due to lack of billing judgment).

The chart below summarizes the time incurred and fees sought by Welmaker during different phases of the litigation.

| Task | Hours | Amount Billed |
|---|---|---|
| Preliminary Matters | 4.75 | $1,543.75 |
| Discovery | 15.5 | $5,037.50 |
| Mediation | 8 | $2,600.00 |
| Pretrial Order and Related Matters | 14.75 | $4,793.75 |
| First Trial Preparation | 34.25 | $11,131.25 |
| First Trial | 24 | $7,800.00 |
| Postverdict Motion | 33.5 | $10,887.50 |
| Revise Jury Instructions | 10.75 | $3,493.75 |
| Second Trial Preparation | 41 | $13,325.00 |
| Second Trial | 28 | $9,100 |
| **Total** | **214.5** | **$69,712.50** |

Tex-Fin challenges numerous entries as excessive. Few of these challenges merit reducing the reasonable number of hours.

Tex-Fin criticizes the use of 15-minute billing increments. The Fifth Circuit has not determined whether 15-minute increments are *per se* unreasonable. *See Conoco, Inc. v. Director,*

14

*Office of Worker's Compensation Programs*, 194 F.3d 684, 692 (5th Cir. 1999) (declining to opine on the use of quarter-hour increments and affirming attorney's fees because the quarter-hour increments appeared to represent adequately the work actually performed).  Some courts apply an across-the-board reduction to the hours billed, presuming that 15-minute increments will inflate the amount of time billed over the course of a case.  *See, e.g.*, *Young v. Sea Horse Venture IV, LLC*, No. 3:07-CV-1818-M, 2009 WL 614823, at *2 (N.D. Tex. Mar. 10, 2009) (reducing hours by 5 percent because billing in large increments "over the life of a case could easily add up to considerable overbilling").  Others review the billing records to identify simple tasks for which the fees have been inflated by using this billing increment.  *See, e.g.*, *Fralick*, 2011 WL 487754, at *6.  This court has previously taken the second approach and Tex-Fin has done so as well, challenging specific billing entries.  *Jones v. White*, Civ. A. No. H-03-2286, 2007 WL 2427976, at *3–5 (S.D. Tex. Aug. 22, 2007).

Tex-Fin challenges a .25-hour charge on January 26, 2009 for listening to a voice mail from Riddle and leaving a message.  A 15-minute charge is excessive for an unanswered phone call.  *Wade v. Colaner*, Civ. A. No. 06-3715 (FLW), 2010 Wl 5479625, at *17 (D. N.J.  Dec. 28, 2010); *Betton v. St. Louis Cnty.*, No. 4:05CV01455 JCH, 2010 WL 2025333, at *7 (E.D. Mo. May 19, 2010); *EEOC v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 724 (M.D. Pa. 2005).  That charge is eliminated.

Tex-Fin challenges a May 17, 2010 entry for .5 hours.  The entry reads, "Listen to voice mail from Plaintiff; returned call."  Tex-Fin contends that the vague entry makes it just as likely that the amount of time billed is a result of the 15-minute billing increment as it is the time actually spent on the call.  This court agrees.  The amount is reduced to .25 hours.

Tex-Fin challenges a March 2, 2009 entry described as "Calendar all dates," Tex-Fin contends that this time is for an administrative task that should have been handled by nonlegal staff. Riddle responds checking dates is important and must be checked by multiple people. That is correct, but it remains a task that should not be billed at lawyer rates. *Haldeman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939 (3d Cir. 1995); *Wade v. Colaner*, Civ. A. No. 06-3715 (FLW), 2010 WL 5479625, at *17 (D. N.J. Dec. 28, 2010); *Betton*, 2010 WL 2025333, at *7; *Filson v. Tulane Univ.*, Civ. A. No. 09-7451, 2010 WL 3943543, at *5 (E.D. La. Oct. 4, 2010). The .25-hour charge is eliminated.

Tex-Fin challenges the time billed for preparing for and attending mediation as unreasonable because Riddle exhibited "little or no movement toward a reasonable settlement of the dispute" during the mediation. Welmaker has already reduced the time charged in 2010 relating to the mediation from 16 hours to 8 hours. Tex-Fin has not disputed Welmaker's assertion that it refused to offer any money to settle, while Riddle reduced his settlement offer by $10,000. As reduced, the time spent on mediation is reasonable.

Tex-Fin argues that the 10.75 hours spent on the pretrial order are excessive.[4] Riddle responds that the order is a very important part of preparing the case and that it is his responsibility. Tex-Fin has not asserted what a reasonable time would have been. The time Riddle seeks is reasonable given the detailed and varied information required in the pretrial order.

Tex-Fin challenges the 24 hours Welmaker spent responding to the motion for entry of judgment after the first trial. Tex-Fin does not identify what a reasonable time would have been or

---

[4]    The difference between the 14.75 hours this court allotted to the pretrial order and Tex-Fin's 10.75 estimate appears to represent time billed for meeting with Riddle, preliminary preparations for the pretrial order, and drafting a letter to Tex-Fin's counsel about the pretrial order.

the specific ways in which the time spent was excessive.  Welmaker notes that the issues were complicated and that winning the motion was essential to the case.  He spent time trying to locate factually similar cases.  Given the esoteric nature of the issue presented and its importance to the client's case, 24 hours is not unreasonable.

Tex-Fin also seeks a reduction in the hours spent preparing for the second trial.  As Tex-Fin acknowledges, the Fifth Circuit has held that if a party prevails after two trials, fees may be recovered for both the first and second trial.  *Abner v. Kan. City S. R.R.*, 541 F.3d 372 (5th Cir. 2008).  Courts generally do not allow an award of fees for the first trial if the prevailing party is responsible for the need for a second trial.  *Id.* at 379–83 (analyzing cases from the First, Second, Seventh Circuits); *see also Scott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 740 (7th Cir. 2003) ("Other circuits have also observed that so long as a plaintiff's actions are not responsible for the need for a second trial, the plaintiff may be compensated for time spent on both proceedings.").  Riddle did not cause the problem that led to the need for a new trial.  It is, however, appropriate to "take into account and discount for repetitive work when there are two trials." *Abner*, 541 F.3d at 383.

Tex-Fin challenges as duplicative the amount of time billed for preparing for the first mediation (4 hours);[5] the first trial (33.5 hours);[6] and the second trial (32 hours).[7]  The first mediation took place in June 2009, the first trial in January 2010, and the second trial in July 2010.  Even with the lapse of time between the two trials and the adjustment in approach from the first to

---

[5]  The entry is dated June 16, 2009.

[6]  The entries are dated January 4–12.

[7]  The entries are dated July 15–19.

the second trial, there was no need to spend the same amount of time preparing for the second trial as for the first.  The witnesses and proof were essentially the same in both trials.  The claims, defenses, and legal theories were the same, with the exception that Tex-Fin dropped its counterclaim in the second trial.  Riddle has not explained why the same amount of time was necessary for both trials, and the billing records shed no light.  This court concludes that it is reasonable to reduce the overall preparation time for the second trial by ten hours.

Tex-Fin challenges a May 25, 2010, 2.75-hour entry labeled "Conference with James Riddle regarding status of the case" as unreasonable and lacking in support.  The conference took place a week before the hearing on the postverdict motions.  There is no explanation for why a status conference with the client would have taken 2.75 hours, when the outstanding issues were matters of law.  This entry is reduced to one hour.

Tex-Fin finally challenges the eight hours Riddle and his attorney spent in conferences on July 5 and 14, 2010.  The first conference, which lasted 1.75 hours, is described as "Conference with James Riddle regarding trial and trial strategy."  The second, which lasted 6.25 hours, is described as "Conference with James Riddle regarding questions about new trial, possible settlement  and areas to be covered at new trial."  To the extent this time was for further trial preparation, it is not clear why so much additional preparation was necessary given the other time charged for trial preparation and the fact that the case had already been tried.  There is no information given on the amount of time spent on settlement as opposed to other matters.  Riddle provides no clarification in his reply why so much time was necessary.  A reduction of four hours is appropriate.

The record supports finding that Riddle reasonably spent 198 hours on the case.  At an hourly rate of $325.00, the lodestar fee is $64,350.

### 2.        Adjustments to the Lodestar

A court may decrease or enhance the lodestar based on the *Johnson* factors.  Some of these factors are subsumed in the initial lodestar calculation and should not be counted again.  *Saizan*, 448 F.3d at 800.  The single most critical factor in adjusting the lodestar to ensure the fee award is reasonable is the degree of success obtained.  *Id.*  "Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'"  *Id.* at 801 (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998)).

At both trials, Riddle sought compensation for approximately 1,512 overtime hours.  The jury inn the second trial concluded that Riddle had worked only 79 overtime hours, approximately 5 percent of the overtime hours he asserted he had worked.  Tex-Fin argues that Riddle should receive no attorney's fees at all, characterizing his recovery as "nominal."  But the FLSA provides that when an employer is found to have violated the statute, "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."  29 U.S.C. § 216(b) (emphasis added).  The Fifth Circuit has acknowledged that even when the plaintiff recovers only nominal damages, such as $1, but has proven every essential element of the case and has shown a violation of a recognized right, a fee award may be appropriate. *Guerrero v. Torres*, 208 F.3d 1006, 2000 WL 177895, at *1–2 (5th Cir. Jan 18, 2000) (per curiam) (unpublished).  In *Guerrero*, the court distinguished *Farrar v. Hobby*, 506 U.S. 103, 104 (1992), which held that when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee

is *usually* no fee at all." (emphasis added).  In the present case, Riddle did prove every element of his claim and showed more than $3,000 in damages.  In FLSA cases, as noted, the amount of damages is often less than the fees awarded.  A fee award is appropriate.

The case law provides guidance on reductions to the lodestar to reflect the degree of success. In *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 151–52 (2d Cir. 2008), the court upheld a 50 percent reduction to the $99,778.75 lodestar based on the plaintiff recovering only $1,774.50 on her FLSA claim, a fraction of the damages initially sought because she failed to obtain collective action certification.  In *Spegeon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999), the Seventh Circuit upheld an attorney's fee award that reduced the lodestar by 50 percent because the plaintiff obtained a judgment that included $1,000 of unpaid overtime, but did not include the other relief that made up the $25,000 prayer.  In *International Brotherhood of Carpenters and Joiners of America , AFL-CIO, Local Union No. 217 v. G.E. Chen Construction, Inc.*, 136 F. App'x 36, 39 (9th Cir. 2005), the court upheld a 67 percent reduction to the lodestar. The plaintiffs initially sought $ 6.7 million but recovered only $7,897 on their FLSA claim; the court awarded $208,173.08 in attorney's fees for the FLSA claim.  In *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1296 (S.D. Fla. 2008), the court reduced the lodestar by 67 percent because the plaintiffs recovered a total of $294,140 after initially seeking more than $15 million in damages under the FLSA.  In *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1326 (M.D. Fla. 2001), another FLSA case, the court reduced the lodestar by 67 percent because the plaintiffs recovered less than 15 percent of the damages originally claimed.  In *Hoffman v. S. Garber, Inc.*, No. 92-C-3535, 1993 WL 189623, at *4 (N.D. Ill. June 2, 1993), the court reduced the lodestar by 41 percent, reflecting the difference between the amount sought under the FLSA and the result obtained.

Reductions to the lodestar based on the degree of success have also been found appropriate in cases outside the FLSA context. *See, e.g.*, *Zook v. Brown,* 865 F.2d 887, 895–96 (7th Cir. 1989) (reducing lodestar by 75 percent in § 1983 case); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) (affirming 67 percent reduction to lodestar in § 1983 case in which the plaintiff recovered only $30,000 of $2 million sought).

Riddle's relatively small recovery in relation to the amount he sought makes a reduction appropriate. The proper measure is not, however, proportionality. The defendants refused to offer to settle the case, surely their prerogative, but also the reason the case was tried and the fees for doing so incurred. *See Red Giant, Inc. v. Molzan, Inc.*, Civ. A. No. H-07-2657, 2009 WL 2242349, at *7 (S.D. Tex. July 24, 2009) (noting that the defendants' "decision to refuse to sign a negotiated settlement agreement, not just once, but twice, [was] a factor that resulted in additional fees being incurred").

The lodestar amount is $64,350. Riddle sought overtime for approximately 1,512 hours and recovered for 79 hours. Taking into account the *Johnson* factors, primarily the degree of success achieved, this court reduces the lodestar amount by 50 percent, for a fee award of $32,175. This amount is a fair, reasonable, and equitable fee, in light of the purposes behind the FLSA and other, similar fee-shifting statutes, as well as Riddle's limited success.

## D.    Costs

Section 216(b) authorizes the recovery of costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow . . . costs of the action.); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1043 (5th Cir. 2010). So does Federal Rule of Civil Procedure 54(d)(1) ("Unless a federal statute, these rules, or a court order

provides otherwise, costs . . . should be allowed to the prevailing party.").  Riddle originally requested $4,502.51 in costs.  Tex-Fin, citing *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988), argued that only $791.54 of the fees were recoverable, because an FLSA plaintiff is limited to the kinds of damages set out in 28 U.S.C. § 1920.  *See also Gagnon*, 607 F.3d at 1045 (reversing a district court's award of costs in an FLSA action when those costs were not set out in § 1920 and the no other statute supported the cost award).  Section 1920 allows the following categories of costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Riddle now seeks $1,782.34, which he asserts are limited to the categories set out in § 1920. Tex-Fin argues that Riddle is entitled only to $791.54.  The difference is a $990.80 fee for an expedited trial transcript that Riddle ordered on July 12, 2010, four days before the second trial. (*See* Docket Entry No. 51).  Riddle did not respond to Tex-Fin's objection.

A party may obtain the cost of an expedited transcript if the court authorizes it in advance or if the special character of the litigation requires expedited processing.  *Thanedar v. Time Warner,*

*Inc.*, 352 F. App'x 891, 903 (5th Cir. 2009) (per curiam) (unpublished) (citing *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991)).  This court was not asked to approve the cost of expediting the transcript.  Riddle ordered the transcript on July 12, five months after the first trial and nearly a month after this court ordered a new trial.  When the party seeking costs fails to justify the extra expense of expediting a transcript, "the district court should reduce the taxable costs . . . to whatever the charge would have been on a non-expedited basis."  *Fogleman*, 920 F.2d at 286; *see also id.* ("Additional charges incurred merely for the convenience of one party's counsel should not be taxed to the other.").  The record does not show a separate charge for a unexpedited transcript.  (Docket Entry No. 51).  This court is unable to separate the unreasonable expense of expediting from the reasonable expense of obtaining the transcript.  Riddle may recover only $791.54 in costs at this time.

       **E.**    **Interest**

Whether an employee may recover prejudgment interest depends on whether the party brings its action under § 216 or § 217.  Although the Fifth Circuit has conceded the distinction is not "logically consistent," prejudgment interest is available for claims under § 217 but not § 216.  *See, e.g.*, *Marshall v. Hope Garcia Lancarte, Inc.*, 632 F.2d 1196, 1199 (5th Cir. 1980); *see also Reich*, 8 F.3d at 1031 (collecting cases).  This is a § 216 case.  Riddle is entitled only to postjudgment interest.

**IV.**    **Conclusion**

Riddle's motion for entry of judgment is granted.  Riddle may recover:

1.     $3,323.61 in actual damages;

2.     $3,323.61 in liquidated damages;

3.      $32,175 in attorney's fees; and

4.      $791.54 in costs.

Riddle is also entitled to postjudgment interest on the above.

Final judgment is entered by a separate order.

SIGNED on March 22, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

24